George HILLER, Appellant,

v.

KAWASAKI MOTORS CORPORATION,
U.S.A. and Persinger's
Marine, Appellees.

No. 6701.

Supreme Court of Alaska.

Aug. 12, 1983.

Gregory J. Grebe, Kelly & Luce, Anchorage, for appellant.

Theodore M. Pease, Jr., James A. Sarafin, Burr, Pease & Kurtz, Anchorage, for appellees.

Before RABINOWITZ, MATTHEWS and COMPTON, Justices, and HODGES and RIPLEY, Judges.*

## OPINION

COMPTON, Justice.

This is an appeal brought by George Hiller from a judgment, entered in accordance with a jury verdict, denying Hiller any re-

---

* Hodges and Ripley, Superior Court Judges, sitting by assignment made pursuant to article IV, section 16, of the Alaska Constitution.

covery on his claims for negligence and strict products liability against the defendants, Kawasaki Motors Corp. and Persinger's Marine. Hiller contends that the judgment should be reversed because the superior court erred in excluding certain evidence and in giving certain jury instructions. Hiller also objects to the award of attorney's fees made to the defendants by the superior court. For the reasons set forth below, we find no reversible error in the superior court's decisions and we accordingly affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 1979, George Hiller sustained a spinal injury when he attempted to jump his 1979 Kawasaki snowmachine over a three-foot embankment at a speed of approximately thirty-five miles per hour. The seat of the snowmachine became partially detached from the chassis during the accident.

On April 14, 1980, Hiller filed suit against the manufacturer of the snowmachine, Kawasaki Motors Corp. ("Kawasaki"), and its retailer, Persinger's Marine. Hiller alleged that Kawasaki had been negligent in its design and manufacture of the snowmachine. Hiller also alleged that the snowmachine was a defective product because the seat had not been securely fastened to the chassis. Hiller contended that Kawasaki and Persinger's Marine were strictly liable because of their failure to warn of the defect or recall the machine.

Hiller's theory of the accident was that the seat of his snowmachine broke away from the chassis in the course of his normal use of the machine. The seat then moved so that it was not under him when he landed after jumping the embankment. Kawasaki contended that Hiller hit the embankment and was thrown, so that he did not land on the machine at all. Kawasaki also contended that the breakage of the seat from the chassis resulted from the force of the impact when Hiller ran into the embankment, rather than from any negligence or defect in the design or manufacture of the machine. Thus, Kawasaki concluded that Hiller's injuries were the result of his own conduct.

Part of the relief sought by Hiller in his suit was an award of punitive damages. Prior to trial, Kawasaki moved for partial summary judgment on this issue. Although the court denied the motion, it nonetheless ultimately dismissed Hiller's claim for punitive damages because Hiller failed to make a prima facie showing that he was entitled to these damages. The court held that "the prejudicial impact of the presentation at trial of evidence and arguments pertaining to the punitive damage issues would not be counterbalanced by considerations of relevancy and materiality to the true issues in the case." At the conclusion of the trial, the court denied Hiller's motion to reassert his claim for punitive damages.

The jury trying the case found that the snowmachine had not been negligently designed or manufactured and that it was not defective. A judgment was accordingly entered for Kawasaki and Persinger's Marine, who were also awarded partial attorney's fees. From this judgment, Hiller appeals.

## II. DISCUSSION

### A. *Jury Instruction on Burden of Proof*

Hiller's first argument is that the superior court erred in instructing the jury that he had the burden of proving that the snowmachine was defective when it left the possession of Kawasaki and Persinger's Marine. Hiller contends that this instruction was inconsistent with our opinion in *Caterpillar Tractor Co. v. Beck,* 624 P.2d 790 (Alaska 1981) ("*Beck II*"). According to Hiller, *Beck II* stands for the proposition that a plaintiff must prove that a defect existed in the product at the time it left the possession of the manufacturer *only* when the manufacturer introduces evidence at trial tending to establish that the product was substantially altered by someone or something before the accident occurred that caused the plaintiff's injuries. This interpretation of *Beck II* misses the mark.

■ In *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871 (Alaska 1979) (*"Beck I"*), we specifically stated that a "product must be defective as marketed if liability is to attach." *Id.* at 879. We also stated that "[t]he established rule is that the product must be shown to be defective when it left the defendant's possession or control." *Id.* at 886 n. 52. This is consistent with the rule of law set forth in the Restatement:

> The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.

Restatement (Second) of Torts § 402A comment g (1964). *See also, e.g., Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851, 854 (1982); *Jiminez v. Sears, Roebuck & Co.,* 4 Cal.3d 379, 93 Cal.Rptr. 769, 482 P.2d 681, 683 (1971); *Farmer v. International Harvester Co.,* 97 Idaho 742, 553 P.2d 1306, 1313 (1976); *Curtiss v. Young Men's Christian Ass'n,* 82 Wash.2d 455, 511 P.2d 991, 996 (1973). We believe this is the proper rule of law to be applied and we accordingly reaffirm our previous holding that the plaintiff in a strict products liability suit must establish as part of his cause of action that the product was defective at the time it left the possession of the manufacturer.

■ Hiller contends that we retreated from this holding in *Beck II.* This is not so. What we stated in *Beck II* was that "a substantial change in the product after it leaves the manufacturer's hands will ordinarily defeat a claim based on strict tort liability." 624 P.2d at 793. This statement is accurate; to the extent that an injury, caused by a substantially altered product, is the result of the product's alteration and not a result of a product "defect" existing at the time of manufacture, the manufacturer is not liable for the injuries. A manufacturer, therefore, may introduce evidence

that its product was substantially altered after leaving its possession, which evidence may rebut or overcome the plaintiff's showing that his injuries were a result of the product's defect. Before, however, the manufacturer is put to the trouble and expense of establishing that its product was altered, the plaintiff must *first* establish that the product was defective when it left the manufacturer's possession. This is a necessary element to any claim for damages based on strict products liability. Accordingly, the superior court did not err in this case in requiring the jury to determine whether the Kawasaki snowmachine was defective when it left the possession of its retailer, Persinger's Marine.

### B. *Excluded Evidence of Defect*

Hiller next argues that the superior court erred in excluding from evidence a deposition that showed Kawasaki had discovered cracks in the seat bases of approximately two per cent of its snowmachines stored in a Lincoln, Nebraska, plant warehouse. The court excluded the deposition under Evidence Rule 403 [1] because it concluded that the prejudicial impact of the evidence outweighed its probative value.

Hiller notes that the deposition was the only direct evidence he had that tended to prove that a defect existed in his snowmachine at the time it left Kawasaki's possession. We agree with Hiller that the existence of cracks in some of the snowmachines stored in Kawasaki's warehouse was relevant to his case because the evidence would tend to support an inference that there may have been a crack in Hiller's machine when it left the possession of Kawasaki and Persinger's Marine. The evidence would also be relevant to establishing the quality of inspection procedures employed by Kawasaki, which relates to Hiller's claim of negligence.

1. Evidence Rule 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The superior court, however, believed that there were valid reasons for excluding the evidence. Its probative value was minimal because the stored snowmachines with cracks in their seat bases were of a different year and model than Hiller's, and were manufactured at a different plant. Furthermore, the reliability of the evidence was dubious because the person testifying had no detailed information in his possession and could not recall very well the facts at issue. Finally, the deposition testimony was duplicative of information contained in an internal corporate memorandum, which was admitted into evidence at trial. The superior court's conclusion that the deposition was unduly prejudicial to Kawasaki and Persinger's Marine was apparently based on its belief that the jury would be unable to ascribe the proper weight to the evidence.

 Even if we were to conclude that Kawasaki and Persinger's Marine would not have been unduly prejudiced by the evidence, which would make the superior court's decision an abuse of discretion, any resulting error would have been harmless under Civil Rule 61 because the same information was presented to the jury in the form of the corporate memorandum admitted into evidence at trial. Civil Rule 61 provides in relevant part as follows: "No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."

### C. Excluded Evidence of Foreseeable Use

Hiller next argues that the superior court erred in excluding from evidence a videotape of a published advertisement in which a person is shown riding a Kawasaki snowmachine through the air, in the process of jumping an embankment. The court excluded the videotape on the basis that its probative value was outweighed by its prejudicial impact.

Throughout the trial, Kawasaki maintained that Hiller's use of the snowmachine, in attempting to jump an embankment, was reckless and unforeseeable. In closing argument, for example, Kawasaki quoted from the owner's manual for the machine: "Never jump your snowmobile. This should be left to professional stunt men."

 Hiller asserts that the advertisement depicted a snowmachine being operated at a faster speed and over a higher embankment than he attempted to operate his snowmachine. Hiller contends that the advertisement was relevant to establishing the foreseeable use of the snowmachine, as to which he had the burden of proof. We agree.[2] We also agree with Hiller that the evidence was not unduly prejudicial to Kawasaki. "Undue prejudice" connotes not merely evidence that is harmful to the other party, but evidence that will result in a decision being reached by the trier of facts *on an improper basis. Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980).

 Nonetheless, we conclude that the superior court's decision not to admit the evidence was harmless error. During the trial, Kawasaki specifically admitted that "on a number of occasions prior to plaintiff's injury, [Kawasaki] promoted and advertised [its snowmachines] with visible representations of said machines being jumped." Furthermore, several owners of similar snowmachines testified at trial that jumping snowmachines constitutes a normal use of the machines. Accordingly, any error by the superior court on this issue was not prejudicial to Hiller. *See* Civil Rule 61;

---

**2.** We reject Kawasaki's suggestion that the advertisement was irrelevant because it was not seen by Hiller and not even aired until after Hiller's accident. The advertisement indicates a use of the machine Kawasaki was able to foresee. "Foreseeable use" in products liability cases focuses on what is foreseeable to the manufacturer, rather than on the subjective knowledge held by the consumer. *See Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641 P.2d 258, 262–63 (Ariz.App.1981); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 56–57 (Okl.1976).

**374**

*Zerbinos v. Lewis,* 394 P.2d 886, 889–90 (Alaska 1964).

### D. *Jury Instruction on Subsequent Accidents and Remedial Measures*

Hiller's last substantive argument is that the superior court erred in instructing the jury that, with respect to Hiller's *negligence* claim, the jury was not to consider the evidence presented as to subsequent changes made by Kawasaki in the design of the snowmachine, nor to consider the evidence presented as to accidents involving broken seat bases occurring after the date of Hiller's accident. Hiller does not dispute the legal accuracy of the instruction, but contends that the instruction was phrased improperly. Rather than informing the jury that it should not consider this evidence with respect to the negligence claim, Hiller contends that the court should have phrased the instruction affirmatively, to state that the jury was to consider this evidence only with respect to the strict products liability claim. Hiller argues that the jury easily could have construed the instruction it was given as prohibiting it from considering the evidence at all.

█ Although there may be some merit to this argument,[3] we nonetheless conclude that the error, if any, was harmless. Another instruction specifically stated that the jury could consider "the feasibility and financial cost of other designs that would reduce or avoid the risk of injury" in determining whether the product was defectively designed. Other instructions made it clear that Hiller was pursuing two separate claims, one for negligence and one for strict liability. The wording of the special verdict form clearly revealed that strict liability and negligence were alternative bases for

recovery. Therefore, although it would have been preferable if the complained of instruction had contained the affirmative statement suggested by Hiller, the version given does not constitute reversible error. *See Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 42 n. 2 (Alaska 1979); *Hash v. Hogan,* 453 P.2d 468, 474–75 (Alaska 1969) (instructions must be read as whole to determine whether reversible error occurred). Accordingly, the judgment of the superior court denying Hiller any relief on his claims against Kawasaki and Persinger's Marine was appropriate.[4]

### E. *Attorney's Fees*

After the jury rendered its verdict against Hiller, Kawasaki and Persinger's Marine requested attorney's fees in the sum of $50,100.00. The court awarded a total of $40,100.00 for attorney's fees. Hiller argues that this award is inappropriate. He contends that products liability litigation in general serves a public interest by encouraging manufacturers to produce safer products. Hiller also contends that his suit played a significant role in Kawasaki's decision to improve the design of its snowmachine. Hiller thus concludes that, pursuant to *Gilbert v. State,* 526 P.2d 1131 (Alaska 1974), attorney's fees should not be awarded against him because his suit involved important public interests.

█ We disagree. First, Hiller's suit did not raise any legal issues of particular public interest. Second, the personal monetary stake Hiller had in his suit precludes it from being considered public interest litigation under our holding in *Thomas v. Bailey,* 611 P.2d 536, 539 n. 9 (Alaska 1980):

Where the sums at stake in the controversy are sufficiently large to prompt suit

---

**3.** The Commentary to Evidence Rule 407 suggests that courts phrase this jury instruction affirmatively, rather than negatively; i.e., the court should have advised the jury to consider evidence of remedial measures taken by Kawasaki and evidence of subsequent accidents involving the seat attachment *only with respect to* Hiller's strict liability claim that the snowmachine was defective. It would, of course, be appropriate to then also state that the evidence

should not be considered on the issue of negligence.

**4.** In view of our disposition of the preceding arguments, it is unnecessary for us to consider Hiller's argument that the superior court erred in dismissing his claim for punitive damages; if Kawasaki and Persinger's Marine are not liable for negligence and/or strict liability, they cannot be liable for punitive damages.

regardless of the public interest, an award of attorney's fees against the losing party has been found reasonable. In such cases, the concern that fear or expense will significantly deter citizens from litigating questions of general interest to the community is inapplicable. . . . Similarly, questions which primarily affect the private rights of the parties before the court lack the requisite public character to prohibit an award, even if some public or constitutional issues are involved.

Hiller contends that, even if we reject his public interest litigation argument, the superior court nonetheless abused its discretion in awarding such a large sum in attorney's fees. It is undisputed that the superior court has broad discretion in awarding attorney's fees under Civil Rule 82 when there is no monetary award upon which to calculate the attorney's fees. *Malvo v. J.C. Penney Co.*, 512 P.2d 575, 586–88 (Alaska 1973). Preparation for this suit entailed extensive discovery. The litigation was complex and lengthy. Furthermore, the defendants' actual expenditures for attorney's fees exceeded $175,000.00. In view of these factors, we conclude that the award of $40,100.00 was not manifestly unreasonable.

The judgment of the superior court is AFFIRMED.